**AIR-TRACK MFG. CORPORATION et al. v. UNITED STATES.**

No. 44986.

Court of Claims.

Oct. 6, 1941.

---

[2] 40 Stat. 300, § 500(d).

[3] 40 Stat. 1057, 1102, § 500(e).

[4] General Petroleum Corp. v. United States, D.C., 24 F.Supp. 285, 287–289.

Standard Oil Company of California v. United States, 39 F.Supp. 180, decided by the District Court for the Northern District of California, June 11, 1941.

Samuel Scrivener, Jr., of Washington, D. C., for plaintiffs.

Samuel E. Darby, Jr., of New York City, and Francis M. Shea, Asst. Atty. Gen. (Paul P. Stoutenburgh and T. Hayward Brown, both of Washington, D. C., on the briefs).

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

WHITAKER, Judge.

Plaintiffs sue the United States for $15,-000 as damages for the infringement of what is known as the Brockstedt patent. They allege that shortly after May 31, 1938, the International Telephone Development Company, Inc., constructed for the defendant "an instrument landing system for aircraft," which included the installation of "four runway localizer beacons * * * which included the use of the double modulation type of equisignal beacon forming the subject matter of and constructed in accordance with the disclosure of" the Brockstedt patent, and which also included "three devices for receiving and discriminating between the radiations establishing said beacons," which, they allege, included "the use of means forming the subject matter of and constructed in accordance with the disclosure of" the Brockstedt patent. Alleging that they had the exclusive right to this patent, they sue for the damages alleged to have been sustained.

The defendant has filed a plea in bar in which it alleges that prior to the construction by the International Telephone Development Co., Inc., complained of, and on January 14, 1936, the plaintiff, Washington Institute of Technology, had granted defendant a nonexclusive license "to make, use and have made for its use devices embodying the alleged invention covered by the Brockstedt patent," and that at the time the said Washington Institute of Technology "owned or controlled" said patent. Attached to the plea is a copy of the contract referred to, the last sentence of article 37(g) of which reads as follows:

"* * * The contractor further grants a license as specified in this paragraph under all letters patent and applications for letters patent owned or controlled by the contractor covering inventions completed and successfully reduced to practice that may be incorporated in the articles hereby contracted for except * * * those specifically reserved in Schedule B hereto attached, wherein are stipulated the terms upon which a license specified in this paragraph may be granted."

Schedule B was not attached.

The plaintiffs filed a replication denying the allegations of the plea. However, in answer to interrogatories propounded to them by the defendant, the plaintiffs admitted that they had entered into the contract filed as an exhibit to defendant's plea, but denied that at that time they owned the entire right, title, and interest in the Brockstedt patent.

The case was referred to a commissioner to take proof on the allegations of defendant's plea. It appears from the testimony that prior to the execution of the contract on which defendant relies the plaintiff, Washington Institute of Technology, on April 3, 1935, had granted to the Eclipse Aviation Corporation the exclusive right to make, use and sell "reed converters," alleged to be covered by the Brockstedt patent. Otherwise the plaintiffs did own the entire right, title, and interest in the patent at the time of the grant of the license relied on by the defendant.

Whether or not the International Telephone Development Company used reed converters in the construction of the instrument landing system for aircraft under the contract executed shortly after May 31, 1938, does not appear, but this does not seem to be material since plaintiffs' suit is based not on an infringement of the patent by the use of reed converters, but on the employment of the methods set out in claims 6, 8, 11, and 16, and it is clear from the testimony that reed converters are not necessary in the employment of the methods set out in these claims.

But plaintiffs say the evidence is not sufficient to show that they had granted a license to defendant, since section 37(g) grants to the defendant a license to use only those patents which covered inventions "completed and successfully reduced to practice that may be incorporated in the articles hereby contracted for except

* * * those specifically reserved in Schedule B hereto attached," and since there is no evidence in the record that in carrying out the contract, in which the license to use the Brockstedt patent was granted, there was employed the methods set out in claims 6, 8, 11, and 16.

Plaintiffs are much embarrassed in maintaining this position by their letter of March 3, 1937. Schedule B was not attached to the contract. 'When plaintiffs discovered this alleged omission, they wrote defendant on March 3, 1937, requesting "an amendment" of the contract so as to exclude from the patent-licensing clause the patent in this suit alleged to have been infringed. In this letter plaintiff stated:

"c. On 14 January 1936, the Contractor entered into Contract (Secret) NOs. 46247 with the Navy Department of the United States Government, such contract being for the development, testing, and delivery of certain equipment and apparatus. The subject matter of this contract included apparatus covered by the claims of Letters Patent No. 1,865,826, referred to hereinbefore."

Here is a direct admission that the contract included apparatus covered by the patent. Throughout the letter there are implied admissions that the defendant had acquired a license to the invention under the patent-licensing clause of this contract. Indeed, the stated purpose of the letter was an amendment of the contract to "exclude from the operation of Article 37(g) of the said contract Letters Patent of the United States No. 1,865,826," the patent in question.

But plaintiffs further say, in substance, that only that part of the invention relating to reed converters was used in carrying out the contract under which the license is said to have been granted. Had this been true, plaintiffs would hardly have written their letter of March 3, 1937, requesting an amendment of their contract, because they had previously granted to another the exclusive license to this part of their patent. But, in addition, it is clearly contrary to the facts.

Lieutenant-Commander Jones testified that the very methods set out in claims 6, 8, 11, and 16, now claimed to have been infringed, were embodied in the use of the structures furnished in the performance of the contract under which the license is claimed. The claims sued on were for a

method of directing aircraft or vessels by radio beams. The methods contemplated the use of a transmitter, a receiver, and a method of interpreting the electrical energy received from the transmitter. The transmitter consisted of two crossed looped antennae, each of which was modulated with a different audio frequency. Each antenna sends off its radiations in a different zone, but because the antennae are crossed, a portion of one zone overlaps the other. Within the center of this space the radiations from each antenna are of equal intensity. When the aircraft or vessel begins to stray from the center of this space it receives radiations from the two antennae with different intensities. Because the two antennae have different audio frequencies, the craft is able to determine in which direction it is straying. This method of directing aircraft by such radio beams Lieutenant-Commander Jones says was employed in the construction called for in the contract under which a license is claimed. No testimony was offered to contradict this.

■ The plaintiff's letter of March 3, 1937, refutes its contention that there is no evidence that the invention had been completed and successfully reduced to practice.

Lastly, plaintiffs urge that defendant did not receive a license under the method claims in issue in this suit because there is expressly excepted from the license clause of this contract, by article 37(f), "process patents, shop practices, and manufacturing methods." The plaintiffs say process patents are method patents and that the claims of the patent here sued on are for a method and, therefore, come within the terms of the exception.

■ In construing the license clause of the contract we must consider, of course, the agreement in its entirety and give full force and effect to all of the license provisions, rather than to a single phrase or clause segregated from the context.

Article 37, the licensing clause, is divided into paragraphs a, b, c, d, e, f, and g. By paragraph (a) the contractor agrees to indemnify the defendant from damages for the use of any articles in the construction of the work that had been patented by others. By paragraph (b) the contractor agrees to prosecute certain applications for patents on any inventions discovered by it in the course of doing the work contracted for and to give the defendant a nonexclusive license thereto. Paragraphs (c) and (d) give the defendant an option to prosecute in the contractor's name applications for patents on any inventions which are not prosecuted by the contractor; and paragraph (e) makes it the duty of the contractor to furnish the defendant with all papers necessary for such prosecution. By paragraph (f) there was excepted "process patents, shop practices, and manufacturing methods." This paragraph provides:

"Process patents, shop practices, and manufacturing methods are not to be considered as included within the terms of this agreement. * * *"

Having thus taken care of inventions discovered in the performance of the work contracted for, the article next grants in paragraph (g) a license to inventions already patented, both those the operation or utility of which was first proven in the carrying out of the contract, and those successfully reduced to practice prior to their use in the carrying out of the contract. In this paragraph no exception is made of "process patents, shop practices, and manufacturing methods." The exception of these is made in the preceding paragraph, following the provisions relating to inventions made in the course of doing the work, and for which no patent had been applied for. Whether or not the exception was intended to apply to the licenses granted in the succeeding paragraph is by no means clear, but whether or not this is so we need not decide, since we are of opinion that by the expression, "process patents," the parties did not mean to exclude from the licensing clause a patent on a method of use of the articles to be furnished, but only intended to exclude patents on the method of manufacture of the articles to be furnished.

"Process patents, shop practices, and manufacturing methods" are excluded from the licenses granted. Using the expression "process patents" in connection with "shop practices" and "manufacturing methods," one would naturally infer that the parties had in mind patents on shop practices or manufacturing methods, or patents of like kind; that is to say, patents in connection with the construction of the article to be furnished. Patents on a method of use of the constructed article in such way as to accomplish a particular result, being of a different kind, one would naturally infer were not in the minds of the parties. Apparently their minds were on the subject

of the making of the article and not on its use.

If we read this paragraph (f) in connection with other paragraphs, this impression is confirmed. Paragraph (b) starts out by saying that "if in the course of the development of the article herein contracted for there shall be incorporated therein any new inventions, * * *" the defendant should have a license to use them. Here the parties evidently had in mind the making of the article and not its use. Paragraph (f) plainly excepts therefrom patents on a method of making the article.

Paragraph (g) deals with patents which the plaintiffs had secured prior to starting on the work contracted for and which were used in performing the contract. The defendant is granted "a nonexclusive license * * * to make, use, and/or have made for its use devices embodying [such] inventions and/or discoveries." The contract, of which this paragraph is a part, provided for the furnishing to the defendant of certain equipment and for so installing it that airplanes could be guided along their courses by a particular method of using the equipment. This method was covered by the patent in question then owned by the plaintiffs. Under paragraph (g) of the contract the defendant was given a license to use this method of guiding airplanes. The equipment furnished was wholly useless to the defendant unless used in this manner. The license was to use the inventions "that may be incorporated in the articles hereby contracted for." This particular method of use of the articles was the essence of their utility to the defendant, the essential attribute of the articles furnished, the pith of the thing it had contracted for, and in which, consequently, it had secured a license. It was known to the parties when the contract was signed that the thing sought by the defendant was this method of guiding airplanes. If, therefore, the defendant did not acquire a license on this method, paragraph (g) is meaningless.

If the term "process patents" in paragraph (f) excludes from the licensing provisions the use of the articles furnished, then it takes away from the defendant the license granted in paragraph (g). The parties, of course, did not intend in one paragraph to give a license on this method of use and take it away in another.

So, in order that the two paragraphs may not be repugnant, we must hold that by the term, "process patents," the parties in this case had only in mind a process utilized in manufacture, not a method of use of the article manufactured.

The plaintiffs themselves construed this particular patent to come within the licensing provision of paragraph (g) when they wrote their letter of March 3, 1937. The purpose of that letter, as it stated, was to amend the contract so as to exclude this patent from its provisions. If it had already been excluded by paragraph (f), there would have been no necessity for this letter.

We are, accordingly, of the opinion that defendant under article 37 of the contract secured a nonexclusive license under as much of the patent in suit as remained in the plaintiffs after the issuance of the prior exclusive license to the Eclipse Aviation Corporation, and, therefore, that the Government secured a nonexclusive license under the method claims 6, 8, 11 and 16 of the patent, which are the claims in issue in this suit. Plaintiffs' petition, therefore, will be dismissed, and it is so ordered.